UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DESTINEE T. ANDREWS,**<br>**Plaintiff,**<br><br>**v.**<br><br>**VICTORIA D. KIJAKAZI,[1]**<br>**ACTING COMMISSIONER OF SOCIAL SECURITY,**<br><br>**Defendant.** | **CIVIL ACTION**<br>**NO. 18-40069-TSH** |

**MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION TO REVERSE OR REMAND THE DECISION OF THE COMMISSIONER AND DEFENDANT'S MOTION TO AFFIRM**
**March 23, 2022**

**HILLMAN, D.J.**

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "SSA") denying the application of Destinee Andrews ("Plaintiff") for Child Disability Benefits[2] and Supplemental Security Income. This Memorandum of Decision and Order addresses Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner of Social Security (Docket No. 20) and the Motion To Affirm the Commissioner's Decision (Docket No. 27)[3]. For the reasons set forth below, Defendant's motion is ***granted*** and Plaintiff's motion is ***denied***.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.
[2] A claimant is entitled to child disability benefits if she became disabled prior to age 22. 42 U.S.C. §402(d)(1)(G); 20 C.F.R. § 404.35
[3] A transcript of the Social Security Administration Official Record ("AR.") has been filed with the court under seal. (Docket No. 10). Citations to the AR page numbers are those assigned by the agency and appear on the upper right corner of each page.

**Procedural History**

Plaintiff began receiving SSI under Title XVI of the Social Security Act ("Act") as a child in August 2004. She applied for child disability benefits under Title II of the Act in October 2012. (AR. 418). In January 2013, the agency determined that Plaintiff's disability would end as of February 2013 – such that she was no longer entitled to SSI – and denied her claim under Title II. (AR. 49, 418). Plaintiff's claims were then denied on reconsideration, (AR. 50, 443), and the ALJ held a hearing at which Plaintiff, her mother, and an impartial vocational expert testified. (AR. 758-91). On January 4, 2017, the ALJ issued a decision finding that Plaintiff was not disabled from February 1, 2013 through the date of the decision. (AR. 20-46). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final and subject to judicial review. (AR. 11-13). 42 U.S.C. § 405(g).

It is Plaintiff's burden to prove that she is disabled under the Social Security Act. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). Plaintiff bears the burden of production and persuasion at steps one through four of the sequential evaluation process, *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001), including the burden of establishing the scope of her residual functional capacity ("RFC"), see *Yuckert*, 482 U.S. at 146; *Vazquez v. Sec'y of Health & Human Servs.*, 683 F.2d 1, 2 (1st Cir. 1982); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The Commissioner's findings at each step are conclusive as long as they are supported by substantial evidence and the Commissioner has applied the correct legal standard. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). It is the ALJ's responsibility to weigh conflicting evidence and resolve issues of credibility. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). "Substantial evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is

not. Rather, '[w]e must uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion.'" *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (*quoting Rodriguez*, 647 F.2d at 222) (alterations in original). This is true "even if the record arguably could justify a different conclusion." *Rodriguez Pagan v. Sec'y of Health & Human Servs*., 819 F.2d 1, 3 (1st Cir. 1987); *see Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 523 (1981) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.")

**Discussion**

The parties are familiar with the factual history of this case, the standard of review, and the applicable five-step sequential analysis. Accordingly, the court will review the procedural and substantive history of the case as it relates to the arguments set forth by the claimant.

**Standard of Review**

Under the Social Security Act, this Court may affirm, modify, or reverse the final decision of the Commissioner, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The Commissioner's factual findings, "if supported by substantial evidence, shall be conclusive," *id.*, because "the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ." *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001) (citation omitted); *see Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 143-44 (1st Cir. 1987). Therefore, "[j]udicial review of a Social Security Claim is limited to determining whether the ALJ used the proper legal standards, and found facts based on the proper quantum of evidence." *Ward v. Commissioner of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).

Plaintiff argues that the ALJ's evaluation of the medical evidence was based upon errors of law and not upon substantial evidence and that the ALJ failed to include a personality disorder among Plaintiff's severe impairments. The Commissioner counters that substantial evidence supports the ALJ's finding that Plaintiff retained the residual functional capacity for unskilled tasks involving no more than occasional changes in the work setting, requiring no interacting with the public, and dealing with things rather than people, and in doing so, the ALJ reasonably weighed the opinion evidence.

Plaintiff first argues that in determining Plaintiff's RFC, the ALJ improperly weighed the medical opinions of Plaintiff's treating sources and the non-examining state agency consultant. An ALJ must "always consider the medical opinions in [the] case record," 20 C.F.R. §§ 404.1527(b); 416.927(b), and SSA regulations prioritize the opinions of a claimant's treating sources. *See* 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1) (stating that "[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). The treating source rule provides that the ALJ should give "more weight" to the opinions of treating physicians because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(c)(2); 416.927(c)(2). Controlling weight will be given to a treating physician's opinion on the nature and severity of a claimant's impairments if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *Id*.

In certain circumstances, however, the ALJ does not have to give a treating physician's opinion controlling weight. *Arroyo v. Sec'y of Health & Human Servs.*, 932 F.2d 82, 89 (1st Cir. 1991) (observing that "[t]he law in this circuit does not require ALJs to give greater weight to the opinions of treating physicians"). The regulations allow the ALJ to discount the weight given to a treating source opinion where it is inconsistent with other substantial evidence in the record, including treatment notes and evaluations by examining and non-examining physicians. *Arruda v. Barnhart*, 314 F. Supp. 2d 52, 72 (D.Mass. 2004); 20 C.F.R. § 404.1527(c)(2)-(4); 416.927(c)(2)-(4); *see also* SSR 96-2p, 1996 WL 374188, at *2. Where controlling weight is not given to a treating source opinion, the ALJ considers an array of factors to determine what weight to grant the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the degree to which the opinion can be supported by relevant evidence, and the consistency of the opinion with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(2)-(6); 416.927(c)(2)-(6). Further, the regulations require adjudicators to explain the weight given to a treating source opinion and the reasons supporting that decision. *See* 20 C.F.R. § 404.1527(c)(2); 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

The ALJ is required, however, to provide "good reasons" for deciding to give the treating source's opinion the weight he did and must state "specific reasons for the weight given to the treating source's medical opinion ... and must be sufficiently specific to make [it] clear to any subsequent reviewers[.]" SSR 96-2p, 1996 WL 374188, at *5; see also, e.g., *Shields v. Astrue*, 2011 WL 1233105, at *8 (D.Mass. Mar. 30, 2011) (Dein, M.J.) ("Because the [ALJ] supported his rejection of the treating physician's opinions with express references to specific

inconsistencies between the opinions and the record, [his] decision not to grant [the treating physician's] opinions significant probative weight was not improper."). *Sanchez v. Colvin*, 2015 WL 5698413, at *7 (D.Mass. Sept. 28, 2015). "Inconsistencies between a treating physician's opinion and other evidence in the record are for the ALJ to resolve." *Roshi v. Comm'r of Soc. Sec.,* 2015 WL 6454798, at *6 (D. Mass. Oct. 26, 2015), quoting *Lee v. Astrue*, 2011 WL 2748463, at *11 (D.Mass. July 14, 2011). The hearing officer is not required to, nor could she reasonably, discuss every piece of evidence in the record*.* *Sousa v. Astrue*, 783 F. Supp. 2d 226, 234 (D.Mass. 2011), citing *National Labor Relations Bd. v. Beverly Enterprises–Massachusetts,* 174 F.3d 13, 26 (1st Cir.1999). Indeed, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party," *Ramos-Birola v. Astrue*, 2012 WL 4412938, at *20 (D.Mass. Sept. 24, 2012) (alteration in original), *quoting N.L.R.B. v. Beverly Enters.-Mass., Inc*., 174 F.3d 13, 26 (1st Cir. 1999) (internal quotation marks omitted).

Here, the ALJ explained that she gave significant weight to the observations and diagnoses of Miriam Kissin, Psy.D., a consulting psychiatrist and gave a detailed explanation of Dr. Kissin's exam. (AR. 32-35). The ALJ acknowledged that Dr. Kissin saw Plaintiff only once and did not review other medical records, but noted that Dr. Kissin performed a mini-mental status examination rather than relying primarily on Plaintiff's subjective statements. (AR. 34). *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). The ALJ also acknowledged that Dr. Kissin stated that, without consistent and appropriate mental health treatment, Plaintiff could have significant difficulty in social functioning and adapting to a work setting. (AR. 35; *see* AR. 364-65). The ALJ explained that, although Plaintiff continued to experience anxiety, her subsequent

treatment notes did not indicate that her symptoms were uncontrolled, and mental status examinations did not support a finding of significant difficulty with social functioning or adaptation. (AR. 35). The record supports the ALJ's reasoning.

The ALJ further explained that she gave significant weight to the diagnosis of Sean Markey, Ed.D, who met with the Plaintiff for a consultative examination to further clarify the severity of her mental impairments. (AR. 36-38). The ALJ acknowledged that Dr. Markey met Plaintiff just once and did not review other medical records, but noted that Dr. Markey administered objective tests rather than relying primarily on Plaintiff's subjective complaints. (AR. 38). *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). While Dr. Markey did not observe Plaintiff to be anxious or diagnose an anxiety disorder, the ALJ gave significant weight to Dr. Markey's report because his report was well documented and he came to his conclusions by his own objective assessments. Based on the record as a whole, the ALJ went on to include an anxiety disorder in Plaintiff's severe impairments. (AR. 25)

Plaintiff contends that the ALJ was required to weigh an opinion from Frank Vargo, Ed.D for a neuropsychological consult and examination. The ALJ summarized Dr. Vargo's report, but explained that Dr. Vargo did not assess any work restrictions. Because Dr. Vargo "did not translate these difficulties into specific limitations … [he] did not offer an RFC opinion for the ALJ to consider." *Brooks v. Berryhill*, No. 16-00553, 2017 WL 4119587, at *5 (D.Me. Sept. 17, 2017), *rep. & rec. adopted sub nom. Brooks v. Soc. Sec. Admin. Comm'r*, 2017 WL 4411032 (D.Me. Oct. 4, 2017). Specifically, Dr. Vargo did not offer an opinion on Plaintiff's functional limitations, therefore there was no error in the ALJ's failure to specify the weight she gave his report. *See Carr v. Astrue*, No. 0910502, 2010 WL 3895189, at *9 (D. Mass. Sept. 30, 2010) (finding no error in the ALJ's failure to address a report that "shed no light on the degree or type of [the plaintiff]'s functional limitation").

Plaintiff asserts that the ALJ should have given controlling weight to her treating psychiatrist at Island Counseling Center, Ronald C. Gobeil, D.O. The ALJ explained that she gave little weight to Dr. Gobeil's April 2013 and August 2014 opinions because, although Dr. Gobeil was a treating physician, he did not have the benefit of reviewing the other medical reports; he provided very little explanation of the evidence relied on to form his opinion; his opinions were inconsistent with the mental status examinations; and his opinions were inconsistent with the treatment record, which did not reveal emergency room visits or hospitalization for psychiatric symptoms. (AR. 39). The ALJ found it inconsistent that an individual who was reported to have marked limitations in almost every area of mental functioning would have had more intensive psychological treatment. The ALJ found that Dr. Gobeil's opinions were neither well-supported nor consistent with the objective evidence, which warranted giving them less weight. (AR. 39). *Johnson v. Colvin*, 204 F. Supp. 3d 396, 409 (D.Mass. 2016). The record evidence supports the ALJ's analysis.

In April 2013, Dr. Gobeil listed only diagnoses to explain his opinion that Plaintiff had marked mental limitations. (AR. 369). *See* 20 C.F.R. §§ 404.1502(f) & (i), 416.902(f) & (i) (distinguishing objective medical evidence from symptoms). The ALJ properly discounted Dr. Gobeil's opinion based on its lack of explanation and objective support. *See* Purdy, 887 F.3d at 13 (explaining that the fact that a doctor "provided no discussion or analysis" and "merely check[ed] the right boxes" went "a long way toward supporting the ALJ's" decision to give his opinion little weight); 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (explaining that the ALJ will give more weight to an opinion that is supported by medical evidence and an explanation).

The ALJ also supportably found Dr. Gobeil's opinions inconsistent with Plaintiff's mental status examinations – including those of Dr. Gobeil himself. Dr. Gobeil consistently

observed normal speech and thoughts; intact judgment, insight, and memory; good attention span and concentration; and normal mood and affect. (AR. 593, 615, 622, 628). Dr. Kissin also observed that Plaintiff was cooperative, had behavioral control, showed intact attention and concentration, and scored 29 out of 30 on a mini-mental status examination (AR. 363), and Dr. Markey observed normal speech and thoughts; no anxiety; and intact attention, concentration, and memory. (AR. 374).

Plaintiff contends that the opinion of Kelley Hendricken, a social worker at Island Counseling, should be given more weight because she was a treating source. As a social worker, however, Ms. Hendricken was not an acceptable medical source. The opinions of other medical sources are not entitled to controlling weight and an administrative law judge is not required to provide "good reasons" for the weight assigned to such opinions or consult the factors in 20 C.F.R. § 416.927(c)(2)-(6). *Taylor v. Astrue,* 899 F. Supp. 2d 83, 88 (D.Mass. 2012). An administrative law judge still must adequately explain the treatment of opinions by other medical sources so that a reviewer can determine if the decision is supported by substantial evidence. *Id.* at 88-89. Further, an administrative law judge cannot ignore entirely the opinions of other medical sources. *Doucette v. Astrue,* 972 F. Supp. 2d 154, 170 (D.Mass. 2013). The ALJ did not completely ignore the opinion of Ms. Hendrickson. Rather, Ms. Hendrickson's psychiatric assessment, diagnoses, and notes were summarized in the ALJ's determination. Ultimately, the ALJ did not completely disregard Ms. Hendrickson's opinion, but granted her therapist report little weight, because she is not an acceptable medical source.

Although opinions from treating and examining physicians may be considered helpful, and in many cases controlling, the ALJ is only required to make a decision that is supported by substantial evidence. Therefore, if the ALJ comes to a conclusion contrary to that of the treating

physician and alternatively adopts the opinion of a non-examining source, then this Court must uphold his decision as long as a "reasonable mind, reviewing the record as a whole, could accept it as adequate to support his conclusion." *See Roshi*, 2015 WL 6454798, at *9. This remains true even if this Court, sitting as a trier of fact, would conceivably rule otherwise. *Monroe v. Barnhart*, 471 F. Supp. 2d 203, 211 (D.Mass. 2007) (internal citations omitted). Because the ALJ's treatment of Dr. Gobeil's opinions was supported by substantial evidence in the record, this court is not at liberty to disturb her decision on that issue. See *Foster v. Colvin*, 2016 WL 3360574 at *10 (D.Mass. 2016) (Casper, J.) (reasoning that an ALJ is not required to discuss every piece of relevant evidence provided that her conclusion is supported by substantial evidence) (citation omitted). Here, the ALJ stated that she had based her findings on the record as a whole. *Roshi*, 2015 WL 6454798, at *10.

Finally, Plaintiff argues that the ALJ failed to include a personality disorder with her finding of severe impairments shows no cause for remand by emphasizing that she has been diagnosed with a personality disorder. "It is not enough for Plaintiff to be diagnosed with certain impairments: Plaintiff must provide evidence that these impairments 'significantly limit[] [her] physical or mental ability to do basic work activities.'" *Grady v. Astrue*, 894 F. Supp. 2d. 131, 141 (D.Mass. 2012) (*quoting* 20 C.F.R. § 404.1520(c)) (first alteration original); *accord Doshi v. Colvin*, 95 F. Supp. 3d 138, 147-48 (D.Mass. 2015) ("A mere diagnosis of a condition 'says nothing about the severity of the condition.'" (*quoting White v. Astrue*, No. 10-10021, 2011 WL 736805, at *6 (D.Mass. Feb. 23, 2011) (*quoting Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). Here, Plaintiff has shown no evidence that a personality disorder caused limitations beyond those the ALJ assessed.

Although Dr. Vargo found Plaintiff's test results suggestive of a personality disorder, (AR. 581), as explained above, he did not assess any functional limitations (AR. 584). To the extent that Ms. Hendricken suggested limitations stemming from a personality disorder (AR. 600-04), as also explained above, the ALJ gave little weight to that opinion. While Dr. Markey suggested that Plaintiff might have a personality disorder, he nevertheless assessed a GAF of 70, indicating at most mild symptoms or limitations. (AR. 375-76). DSM-IV-TR 34. And Dr. Perlman considered Dr. Markey's opinion and opined that Plaintiff had a severe personality disorder but that she could still do simple, routine tasks for at least two hours and relate in a socially appropriate manner. (AR. 437-40). The ALJ relied in part on Dr. Markey's report and Dr. Perlman's opinion to assess Plaintiff's RFC. (AR. 37, 44). Because there is no credible evidence that a personality disorder caused greater limitations than the ALJ assessed, any error in not including that impairment at step two does not require remand. *See Blais-Peck v. Colvin*, No. 14-30084, 2015 WL 4692456, at *6 (D.Mass. Aug. 6, 2015) (finding any error at step two harmless where the claimant "failed to produce any evidence that suggests a limitation greater than that acknowledged by the ALJ in his RFC assessment").

## Conclusion

For the reasons set forth above, Plaintiff's Motion for Order Reversing Decision of the Commissioner (Docket No. 11) is ***denied*** and Defendant's Motion for Order Affirming the Commissioner's Decision (Docket No. 15) is ***granted***.

**SO ORDERED**.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE